Common Pleas Court of Hamilton County.

MURRAY MONDSCHEIN *v.* THE WILLIAM FINKE STORES CO.

Decided September —, 1929.

*Jones, LeBlond, Terry & Gilday,* for plaintiff, Mondschein.
*Jos. W. O'Hara,* for the receiver.
*Kunkel & Kunkel,* for defendant, Finke.

HURLEY, J.

This cause is an action in equity and arises out of the receivership of the William Finke Stores Company, located at 19 West Fifth Street, Cincinnati, Ohio.

On February 19, 1929, Julius B. Tietz was duly appointed receiver of the above named concern, which operated a ladies' ready to wear store at the above address.

On March 6, 1929, the aforesaid receiver made application to this court to sell the physical assets of the defendant corporation, and the court authorized such sale to be held upon the premises of the William Finke Stores Company, on Wednesday, March 13, 1929, at 2 o'clock p. m., the said business to be auctioned in its entirety to the

highest bidder for cash. The sale took place at the time and place mentioned, and after spirited bidding between Murray Mondschein and William Finke, who this court previously had held constituted a partnership owning the above concern, and not a corporation within the Ohio law, were the principal bidders. The business was sold to Mondschein at his bid of $4800. Mondschein evidenced his good faith by a payment of $1,000 in cash to the receiver and agreed to pay the balance of his bid on the same day, or at the latest the next morning, which he failed to do, and has since failed to pay such balance and has stated that he is unable to do so.

The assets of this concern were of strictly seasonable character and in order to protect the interests of the creditors, the receiver herein reported the above facts to the court and made application for another sale on March 16, 1929. The court, thereupon made an order finding the statements in the application to be true, and authorized the receiver to again offer such assets for sale on the premises, on March 22, 1929, at 2:00 o'clock p. m., with the same terms and conditions that controlled the first sale.

The receiver then made application to hold the $1,000 paid by Mondschein at the first sale for the benefit of the creditors.

Finally, on March 22, 1929, the second sale was had. William Finke, Murray Mondschein and others bid at this sale and the price of the business was bid up to $3,000, but on inquiry of the receiver it appeared that Mondschein was not prepared to pay the amount of the respective bids in cash should they be accepted by the receiver. Thereupon the property was sold to William Finke at his bid of $1,950, which amount he thereupon paid in cash to the receiver, who duly filed his report with the court, and the sale was thereafter confirmed and the assets delivered to Finke.

Thereafter, Murray M. Mondschein applied to this court for an order directing the re-payment of said sum of $1,000 to him by the receiver. This motion was submitted to the court at an oral hearing. An objection to such re-

payment was made by counsel for the receiver and various creditors of the William Finke Stores Company.

Counsel for the plaintiff herein, Murray Mondschein, in behalf of their client, submit six reasons why the aforesaid $1,000 should be repaid to the said Murray Mondschein, as follows:

First: The price offered, to-wit: Forty-eight Hundred dollars ($4,800) was grossly in excess of the real and actual value to any one.

Second: It is entirely within the discretion of this court, sitting in equity, to comply with the request.

Third: The terms of the decree of sale set down specifically by this court were not complied with and any sale thereunder would not be a valid one.

'Fourth: That the ridiculously high bid was induced in this case by "puffing."

Fifth: Favorable action by this court will not result in loss or detriment to any creditor.

Sixth: The amount involved being in excess of twenty-five hundred dollars ($2,500) the sale was invalid, not being evidenced by writing, contrary to statute of frauds.

The first reason can be dismissed very readily with the thought in mind that Mondschein when he made the bid of $4,800 went into this proposition with his eyes open, and the question of the excessive value of the business is beside the question. If any one should have known the reasonable amount to be paid for the business it was Mondschein himself.

Second. With reference to the question of this court having the discretion, sitting in equity, which this action is. It may be said that he who goes into equity must do so with clean hands, and he who seeks equity must do equity.

The court is of the opinion that this plaintiff cannot seek relief in equity for the foregoing two reasons. *Clark on Receivers*, Section 638 (2nd Ed. Section 492); *Murray v. Hardee*, 22 C. C. 511.

Third. That the terms of the decree of sale set down specifically by this court were not complied with, and any sale thereunder would not be a valid one. It appears to this court that the plaintiff herein was duly advised that this sale was to take place at the time and place men-

tioned in the decree, and he was there and ready to assert his rights, which he did do, and further that the proper time to make complaint as to the terms of the sale is not now, but was at the time and place the sale was held.

Fourth. With reference to the claim that Mondschein's bid was induced by "puffing" on the part of Finke. There is no evidence to warrant this assumption, because both of them were doing their utmost to secure this business, which each one knew to be a profitable business if properly operated. It appears to this court that both of them having been associated in the business knew all the facts with reference to the conduct of the business, and in addition thereto it appears that the said Finke was ready and willing to pay whatever amount the business was struck off to him for and exhibited the necessary checks to the receiver and there is no evidence of bad faith at the sale, at least on his part.

Fifth. As to the question of the creditors agreeing to return their proportionate share of the $1,000 to the plaintiff Mondschein. The court has already ruled that Mondschein cannot seek equity to remedy a condition which he himself brought about, therefore, it is obviously clear that this court can take no action with reference to the return of the $1,000 by any agreement between the creditors and Mondschein. This is entirely an individual matter between the creditors and Mondschein, and those creditors who have indicated that they are willing to have $1,000, or their proportionate share thereof, returned to Mondschein, may do so if they see fit but this court will not enter any such order.

Sixth. The amount involved being in excess of $2,500, the sale was invalid, not being evidenced by writing contrary to the statute of frauds. This may be dismissed by referring to Section 8384, General Code, which reads as follows:

"A contract to sell or a sale of any goods or choses in action of the value of twenty-five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold, and actually receive them, or *give something in earnest to bind the contract,* or *in part*

*payment,* or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

For the reasons above stated, and because of the additional fact that in receiverships the court will always do its utmost to protect the creditors, this court cannot see any reason why an order should be issued to return what this court considers to be Mondschein's legitimate bid at the original sale. Certainly no court of equity will grant relief to one who violates the axioms of equity and then seeks relief in equity.

Therefore the $1,000 paid by Mondschein at the original sale will be held in the hands of the receiver and at the proper time distribution may be made in accordance with law to the various creditors.

The motion for the return of the $1,000 to the plaintiff herein, Mondschein, will therefore be overruled, and an entry may be drawn accordingly.